NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3753
_____

AMERICAN WESTERN HOME INSURANCE CO.,
Appellant,
v.

DONNELLY DISTRIBUTION, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-11-cv-01415-BMS)
District Judge: Honorable Berle M. Schiller
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 18, 2013

Before: FUENTES, CHAGARES and BARRY, *Circuit Judges*

(Opinion Filed: April 26, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

This appeal arises out of an insurance contract dispute between Plaintiff-Appellant, American Western Home Insurance Company ("American Western"), and Defendant-Appellee, Donnelly Distribution, Inc. ("Donnelly"). The question before us is whether, under Pennsylvania law, American Western has a duty to defend or indemnify

Donnelly in connection with a civil action filed in Pennsylvania state court ("Underlying Action"), under the terms of a Commercial General Liability policy it issued to Donnelly (the "Policy"). The District Court held that it did.

## I. Background

### A.      The Parties and the Underlying Action

Because we write primarily for the parties, we set forth only the facts relevant to this appeal. Donnelly distributes newspapers, advertisements, and other paper circulars in Philadelphia, Pennsylvania. Donnelly purchased the Policy from American Western, providing coverage for commercial tort liability and losses to commercial property. The Policy contains a provision (the "Premises Provision") restricting coverage to bodily injuries "arising out of . . . [t]he ownership, maintenance or use" of 1301-05 N. Howard Street, Philadelphia, Pennsylvania 19122 ("Howard Street Premises") and operations "necessary or incidental" to those premises. App. 32.[1] Donnelly's Howard Street Premises is a regional warehouse that serves as a drop point for Donnelly's distributors to pick up materials and deliver them to designated neighborhoods.

In November 2007, Donnelly was sued by a woman who claimed that she was injured when she slipped and fell on plastic ties that bind the materials Donnelly distributes, and that its employees negligently discarded. The complaint in the Underlying Action claimed that the accident occurred on the pavement near 5353 Saul

---

[1] The parties also dispute the effect of a provision excluding coverage for "'bodily injury' . . . due to the rendering or failure to render [the professional services of paper distributing]." App. 69. Because we hold that the Premises Provision is dispositive of this case, we do not reach that issue.

Street. The parties do not contest that these premises are not the same as the Howard Street Premises.

American Western agreed to fund Donnelly's defense of the Underlying Action and appointed counsel, but reserved its rights and defenses under the Policy. Eventually, American Western filed this action in the District Court seeking a declaratory judgment that the Premises Provision bars coverage of the Underlying Action and that American Western is under no duty to fund Donnelly's defense of, nor to indemnify Donnelly for, any loss resulting from the Underlying Action. A settlement was reached in the Underlying Action while this case was pending in the District Court.

## B.    Proceedings in the District Court

The parties cross-moved for summary judgment. The District Court granted Donnelly's motion. The Court concluded that the Premises Provision did not bar coverage of the Underlying Action, and held that American Western had a duty to defend Donnelly. It also concluded that because the Underlying Action settled, American Western had a duty to indemnify Donnelly for amounts Donnelly may be obligated to pay under the terms of that settlement. American Western timely appealed.

## II. Discussion

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's entry of summary judgment *de novo* and apply "the same standard as the District Court in determining whether summary judgment was appropriate." *United States ex rel. Kosneske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009).

## A. Pennsylvania Law on Insurance Contracts

A Pennsylvania court tasked with determining the scope of coverage of an insurance policy must examine the plain language of the policy to infer the intent of the parties. *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540 (Pa. 2010). If the policy contains any ambiguities, they are construed against the insurer. *Id.* Where the policy contains clear and unambiguous language, however, the court is required to give effect to that language. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 326 (3d Cir. 2005).

The Pennsylvania Supreme Court has explained that an insurer has the duty to defend an insured if the factual allegations of the Underlying Action "on [their] face encompass an injury that is actually or potentially within the scope of the policy." *Jerry's Sport Ctr.*, 2 A.3d at 541. If the insurer is doubtful as to whether the complaint may or may not fall within the scope of the policy, it is obligated to defend the insured. *Id.* By contrast, the duty to indemnify is narrower, and only arises as to those losses that are *actually* within the policy's coverage. *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 831 n.1 (3d Cir. 1995).

## B. Duty to Defend

The parties agree that American Western has a duty to fund Donnelly's defense of the Underlying Action unless the injury at issue in that action is found to be outside the scope of the injuries covered by the Premises Provision. Donnelly argues that the injury at issue in the Underlying Action is within the scope of the Premises Provision because it arose out of the "operations necessary or incidental to the [Howard Street Premises]."

4

App. 32. Donnelly contends that this is so because the injury was caused by the plastic ties that bind Donnelly's papers, which are connected to the paper distribution activities that are conducted at least in part out of the Howard Street Premises pick-up point.

We reject Donnelly's broad reading of the Premises Provision. That Provision explicitly limits coverage to injuries arising out of the ownership, maintenance, or use *of* the Howard Street Premises, and limits the type of covered operations to those necessary or incidental to *those premises*. Donnelly's reading in effect means that any accident, occurring anywhere, that may be somehow connected to Donnelly's paper distribution business is covered by the Policy simply because the Howard Street Premises are used as a pick up point in that business and are mentioned explicitly in the Policy's Premises Provision. But, based on the plain terms of the Premises Provision, we doubt that the parties intended a reference to one distribution center to trigger coverage for losses resulting from the entirety of Donnelly's business. Had the parties intended to provide for business-wide coverage, they surely would have found a clear way to say so, rather than by including an oblique reference to one particular (and seemingly random) distribution center.

The court in *Colony National Insurance Company v. Hing Wah Chinese Rest.*, 546 F. Supp. 2d 202 (E.D. Pa. 2008), persuasively explained the proper scope of coverage of a clause like the Premises Provision. In *Hing Wah*, an insurer brought an action seeking a determination that it had no duty to defend or indemnify an insured restaurant in an underlying action involving a car accident with the restaurant's food delivery driver. *Id.* at 204-05. The policy there insured the location of the restaurant and contained a

5

premises provision identical in all material respects to the one at issue here, providing that "'[t]he insurance applies only to . . . injury . . . arising out of . . . [t]he ownership, maintenance or use of the premises in . . . operations necessary *or incidental* to those premises.'" *Id.* at 209 n.10. Relying on Pennsylvania law, the district court construed the premises provision as excluding accidents that occurred due to the restaurant's delivery business, reasoning that the phrase "necessary or incidental" referred to the premises that were the subject of the policy and not the restaurant's business. *Id.* The court distinguished the act of delivering food for a restaurant business from activities that would classify as necessary or incidental to the operations of the specifically listed premises, such as food preparation and maintenance of the parking area, taking delivery of a new refrigerator, and shoveling snow from the entrance. *Id.*

We adopt the *Hing Wah* court's analysis. The Premises Provision by its terms only contemplates coverage of operations that are necessary or incidental to the insured premises, not the entirety of Donnelly's business operations. The Underlying Action involves an accident allegedly caused by the negligent disposal of plastic ties at a location other than the Howard Street Premises, an activity not necessary for the operation of the Howard Street Premises. Moreover, such activity is incidental to Donnelly's *business*, not to the Howard Street Premises. The Underlying Action does not involve an accident where, for example, an individual was injured while receiving a delivery of machinery for use at the insured premises. Thus, the necessary causal relationship between the Underlying Action and the insured premises is not present and American Western does not have a duty to defend Donnelly in connection with the Underlying Action.

## C. Duty to Indemnify After Settlement

Donnelly also argues that under our decision in *Pacific Indemnity v. Linn*, 766 F.2d 754 (3d Cir. 1985), American Western has a duty to indemnify Donnelly because the Underlying Action settled while American Western was believed to have a duty to defend Donnelly.

In *Linn* we held that the duty to indemnify followed the duty to defend where settlement of an underlying action involving multiple theories of liability and several competing insurers made it impossible to determine which of the multiple insurers had a duty to indemnify. *Linn*, 766 F.2d at 766. However, unlike *Linn*, this case involves only one insurer and liability is based on a single theory. There is nothing to indicate that in this case settlement made it impossible to determine whether coverage under the Policy was warranted. *Linn* is therefore inapposite. *See, e.g.*, *12th Street Gym, Inc. v. Gen. Star Indemn. Co.*, 93 F.3d 1158, 1167 (3d Cir. 1996) (distinguishing *Linn* where the insured participated in the settlement of the underlying case).

Moreover, Pennsylvania courts have explicitly rejected Donnelly's expansive reading of *Linn*, and explained that there is no blanket rule giving rise to a duty to indemnify where the insured settles the underlying action. *See, e.g.*, *Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1161 n.8 (Pa. Super. Ct. 2009). To the contrary, Pennsylvania courts have made clear that the very purpose of filing a declaratory action in an insurance dispute such as this is to determine whether a duty to indemnify exists in the first place. *Id.* at 1161. In this case, because we hold that American Western does not have a duty to defend Donnelly in connection with the Underlying Action, it follows that

7

American Western does not have a duty to indemnify Donnelly for any amount due pursuant to the settlement of the Underlying Action.

### III. Conclusion

For the foregoing reasons, we will reverse the judgment of the District Court.